## STATE *v.* JOEL DISHMAN.

Where, upon the trial of an indictment for larceny, the only evidence against the defendant was: That when the witnesses for the State entered a still house where the stolen property (a hog) was found, between eleven and twelve o'clock at night, "the defendant was lying on a pallet, apparently asleep, and it was not shown that he awoke during the time the witness engaged in a conversation with his co-defendants, each of whom charged the other with the larceny; and there was no evidence *aliunde* connecting the defendant with the larceny: *It was held,* That the court below erred in refusing to charge the jury that the evidence was not sufficient to warrant the conviction of the defendant.

INDICTMENT for *Larceny,* tried before *Furches, J.,* at Fall Term, 1875, of the Superior Court of WILKES county.

The defendant was jointly indicted with Daniel Dishman, Noah Hardin and W. G. Cheatham, for the larceny of a hog, the property of one Bartlett Mullis.

Mullis was examined as a witness, and testified : That about the first of June, 1872, he lost a sandy or sorrel-colored hog, weighing about forty or fifty pounds, marked with a hole in his left, and an underbit in his right ear.

On the trial, J. W. Redman testified : That he was an officer and had a warrant for the arrest of Noah Hardin and Daniel Dishman, and had been for some days trying to arrest them. On the night of the 4th June, 1872, about 11 or 12 o'clock, he and one Osborn Anderson went to the still house of the defendant, Cheatham, in search of said Dishman and Hardin. Upon arriving at the still-house, he demanded to know who was in the house, and the defendant, Cheatham, said he would tell him if he would not shoot. He told him he would not, and witness and Anderson went in. In the still house they found the defendant Cheatham and his brother and Daniel Dishman, Joel Dishman and Noah Hardin.

Joel Dishman was lying on a pallet, apparently asleep.

Witness found the head and liver of a hog cooked and hot, in a pot, with a sheep skin thrown over it. He asked what that was? The defendant (Cheatham) replied that it was his, and his brother's "edibles." Upon examination, he found the fresh pork of a small hog in two other places in the still-house. He then charged them with stealing it. The Cheathams charged the defendants Hardin and Daniel Dishman with killing the hog and bringing it there, and the Dishmans and Hardin charged the Cheathams with killing it.

Osborne Anderson was examined as a witness, and testified substantially to the same effect as Redman, except that he said that the Dishmans and Hardin accused the Cheathams of killing the hog *and bringing it to the still-house.*

The counsel for the defendant requested the court to charge the jury, that there was no evidence against the defendant, Joel Dishman.

The instruction prayed for was refused by the court, and the defendant excepted.

The court, after summoning up the evidence, charged the jury: That it was for them to determine the weight and effect of the testimony; that they must be satisfied of the defendants' guilt, before they could find him guilty; that is, that he took the hog, or assisted in taking the hog of Bartlett Mullis, for the purpose of appropriating it to his own use, and without letting Mullis know that he had done so; that if the testimony satisfied them that the defendant did so take the hog, they should return a verdict of guilty; but if it did not so satisfy them, then they should return a verdict of not guilty.

The jury rendered a verdict of guilty, and the defendant moved for a new trial. The motion was overruled and judgment pronounced, and thereupon the defendant appealed.

*M. L. McCorkle,* for the prisoner.
*Attorney General Hargrove,* for the State.

SETTLE, J.   We think his Honor should have charged the jury, in compliance with the prayer of the defendant, that there was no evidence to warrant his conviction.

We are to take it that all of the evidence has been sent to this court.   From this, it appears that when the witnesses for the State entered the still-house, between eleven and twelve o'clock at night, "the defendant Joel Dishman was lying on a pallet apparently asleep," and it is not shown that he said anything or heard anything, or even woke up and remained silent, during the time the State witnesses were in the still-house talking with the other defendants about the missing hog and the fresh meat.   Why set forth the fact prominently, in the record of the evidence, that the defendant was apparently asleep, unless that fact be of importance, and is to have its proper weight in determining the guilt or innocence of the accused? And of what possible consequence could it be in determining that question, if it be true as contended by the State, that the defendant woke up and participated in the conversation about the lost hog?

The only foundation for the suggestion that the defendant did awake and join in the conversation, is the very unsatisfactory statement that " when the Cheathams charged the Dishmans and Hardin with killing the hog and bringing it to their still-house, the Dishmans charged the Cheathams with killing the hog," &c.

Let it be remembered, there was no charge in the warrant against Joel Dishman, and in view of the fact, already commented upon, the circumstance that, in making up the case for this court, the Cheathams and Dishmans are spoken of in the plural number, affords no sufficient ground to infer that there was any evidence against Joel Dishman.

Let it be certified that there must be a *venire de novo.*

PER CURIAM.                                    *Venire de novo.*